IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEBBIE WELLS-GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 11 C 8213 |
| | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| ST. XAVIER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Debbie Wells-Griffin, an African-American, sued her former employer Saint Xavier University ("SXU") alleging various claims of discrimination and retaliation based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. SXU moves for summary judgment on all claims. (Dkt. 39.) For the following reasons, SXU's motion is granted.[1]

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P.

---
[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3).

56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott* v. *Harris*, 550 U.S. 372, 378 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex*, 477 U.S. at 323-24.

## BACKGROUND

In August 2005, SXU hired Wells-Griffin as a full-time secretary working for two departments, the Center for International Education ("CIE") and the Center for Educational Practice, later renamed the Center for Advancement of Teaching and Learning ("CATL"). Both CIE and CATL reported to the provost of SXU.

Wells-Griffin's supervisors recommended her for a promotion during her first year and, in October 2007, Wells-Griffin was promoted to a higher grade secretarial position. In connection with the promotion, she ceased work for CIE and worked for CATL exclusively. Wells-Griffin was promoted again on January 1, 2008 to the exempt[2] position of "Coordinator of

---

[2] The SXU staff handbook has the following discussion of exempt and non-exempt positions: "All staff are classified as either 'nonexempt' or 'exempt.' This is necessary because, by law, staff in certain types of jobs are entitled to overtime pay for hours worked in excess of forty (40) hours per work week. These staff are referred to as 'nonexempt' in this Handbook. This means that they are not exempt from—and therefore should receive—overtime pay. Exempt staff are professional staff, technical staff, officers, directors, and others whose duties and responsibilities allow them to be 'exempt' from overtime

Faculty Development Initiatives and Information Specialist" for CATL. During the 2008-2009 school year, Christie Ahrens, a faculty member in the School of Education, was the director of CATL. Wells-Griffin began reporting to Ahrens in December 2008.

SXU was not spared the impact of the financial crisis in the fall of 2008. Between late December 2008 and early January 2009, SXU experienced falling enrollments and a resulting budget shortfall of $1.5 million. Due to the financial distress, SXU eliminated a total of 18 jobs in January 2009. Dr. Angela Durante, SXU's provost and the individual in charge of CATL, made the decision to eliminate five jobs from the Academic Affairs department. None of the employees terminated were African-American.

Also in January 2009, Durante decided to modify Wells-Griffin's position from full-time coordinator for CATL to half-time coordinator for CATL and half-time assistant for CIE. By taking on the two half-time positions, Wells-Griffin would be able to retain her status as an exempt full-time employee. On January 14, 2009, the assistant provost, Dr. Richard Venneri, met with Wells-Griffin to discuss the change to her position. Venneri and a member of the human resources department met with Wells-Griffin again two days later. At this meeting Wells-Griffin stated that the change to her position felt like an adverse employment action. Venneri raised his voice in response to her statement.[3] After the meeting, Wells-Griffin emailed

---

pay provisions as provided by law. The Directors of Employee Services, along with the area Vice President, will recommend exempt or nonexempt status." (*See* dkt. 46, ex. J at 2-1.)

[3] The parties disagree about why and how much Venneri raised his voice. (*Compare* dkt. 41, ex. D ("Venneri Dep.") at 93:6-16 ("Q: Do you recall raising your voice at any point during the January 16 meeting? A: Yes. Q: Would you say you raised your voice slightly? A: Slightly . . . Not a voice of anger but of frustration, and then the frustration had me try to recast again the university's situation, financial situation, which probably meant nothing."), *with* dkt. 41, ex. A ("Wells-Griffin Dep.") at 75:3-14 ("[W]hen I began to question the format of those discussions, like why are we in human resources, why do I feel like this is an adverse employment action, he lost it. He jumped up, started screaming, accusing me of making - - 'all you want to do is make threats.' He was loud . . . . And he stormed out of employee services. We didn't finish discussing it.").) Although the court notes the dispute, the extent to which Venneri raised his voice in the January 16 meeting is not a material fact.

Durante to report that Venneri spoke to her in a "rude and hostile manner" and "accused [her] of being defensive and of making threats." (Dkt. 41, ex. A ("Wells-Griffin Dep."), ex. 6.)

On or around January 28, 2009, Wells-Griffin met with Durante and SXU's director of human resources, John Byrnes. Durante told Wells-Griffin she could either stay solely with CATL and be reduced to half-time or accept the responsibilities at CIE and continue as a full-time employee. Wells-Griffin responded that her current position in CATL had a full-time workload. Durante expressed doubt that the work in CATL was enough to keep Wells-Griffin busy all the time and said that she was fortunate to have exempt status without a college degree.[4]

Wells-Griffin sent a follow-up email to Durante regarding her workload on January 28, and Durante responded that her decision to reduce the CATL position to half-time was going forward. (*See* Wells-Griffin Dep., ex. 9.) On February 16, 2009, Durante sent Wells-Griffin a letter informing her that her position with CATL would be reduced to half-time effective March 31, 2009 and offering her the additional half-time support position with CIE beginning April 1, 2009. (*See* dkt. 41, ex. C ("Durante Dep."), ex. 53.) The letter gave Wells-Griffin until March 9, 2009 to decide whether to accept the CIE position. (*Id.*)

On February 23, 2009, Wells-Griffin filed an official grievance with Byrnes regarding the changes to her position. (*See* Wells-Griffin Dep., ex. 57.) Byrnes responded to the grievance by letter dated February 28, 2009. (Dkt. 41, ex. E ("Byrnes Dep."), ex. 20.) He denied Wells-Griffin's request to keep her position in CATL as a full-time position and noted, "In these hard

---

[4] Again, the parties disagree about the tone of these statements. (*Compare* Wells-Griffin Dep., ex. 57 ("I was . . . insulted and berated by Dr. Durante who stated: 'You can't possibly be working eight hours a day,' and 'you're lucky to have exempt status without a degree,'"), *with* dkt. 41, ex. C ("Durante Dep.") at 126:10-127:5 ("I may have said I don't think the volume in CATL is enough to keep you busy all the time . . . [a]nd secondly, I probably did say something that, you know, you're in a fortunate or lucky position to have exempt status without a degree.").) The court does not believe the exact tone of the statements to be a material fact.

economic times, the University is justified in making adjustments with two (2) part time positions and creating one full time position for you so you will maintain your full time status and continue to have and enjoy outstanding benefits provided by the University to full time staff." (*Id.*) On March 5, 2009, Wells-Griffin appealed her grievance to SXU's president, Dr. Judith Dwyer. (*See* Wells-Griffin Dep., ex. 16.) Her appeal was denied on March 16, 2009. (*See id.*, ex. 17.) Because of the outstanding appeal of her grievance, Wells-Griffin was given until March 27, 2009 to decide whether she wanted to accept the half-time position at CIE.

On March 26, 2009, Byrnes met with Wells-Griffin and provided her with information regarding the job description for the combined CATL/CIE position. (*See* Wells-Griffin Dep., ex. 55 at 2.) Later that day Wells-Griffin emailed Byrnes a request for additional information, stating that "it would be ill advised of me to make a decision concerning the terms of my employment in the absence of official position descriptions." (*Id.*) Byrnes responded the next morning confirming that the deadline for her decision was that day and that he believed she had all information necessary to comply with the deadline. (*Id.* at 1.) Wells-Griffin replied that afternoon, reiterating her concern about the lack of official job descriptions but did not make a decision regarding the CIE position. (*Id.*) Wells-Griffin never officially conveyed a decision regarding her employment with CIE, and on April 1, 2009, her position with CATL was reduced to half-time. She never took on the additional duties for CIE.

Wells-Griffin's direct supervisor at CATL, Ahrens, left SXU in June 2009, leaving Well-Griffin as the only employee at CATL. Because there was no replacement lined up at the time of her departure, Ahrens' responsibilities for overseeing CATL moved to Venneri. Before Ahrens left, she signed Wells-Griffin's annual self-evaluation without adding any comments of her own.

Wells-Griffin had awarded herself perfect scores in each category.[5] When Wells-Griffin asked that Venneri and/or Durante also sign the evaluation, neither was willing to do so because both lacked experience supervising Wells-Griffin. In addition, Venneri expressed skepticism that Wells-Griffin deserved such a positive evaluation. (*See* dkt. 41, ex. D ("Venneri Dep.") at 99:5-104:20.) Ultimately, Durante told Wells-Griffin that the evaluation would be placed on hold for six months until she could supervise Wells-Griffin's work herself.

CATL remained without a director through the summer of 2009 because "the most qualified faculty [were not willing] to take on th[e] role," (Durante Dep. at 144:4-5), and in late summer, Wells-Griffin, Venneri, and others began to prepare for one of CATL's main events, new faculty orientation, which was to be held on August 20. During the week of the orientation, Wells-Griffin worked 15.25 hours beyond her half-time schedule. Before working the additional hours, Wells-Griffin discussed the issue with Venneri, and he agreed that she could take the next Monday off. At the conclusion of the orientation, however, Wells-Griffin told Venneri that she was going to take off both Monday and Tuesday of the next week. Venneri objected, again raising his voice to Wells-Griffin. The next day Wells-Griffin emailed Durante to report that Venneri had raised his voice to her again, and to request clarification of Durante's expectations for Wells-Griffin, among other things. (*See* Wells-Griffin Dep., ex. 69.) Durante did not respond despite Wells-Griffin's follow-up a week later on August 28 requesting a response. (*See id.*, ex. 72.)

Three days after Wells-Griffin's follow-up email to Durante, on August 31, 2009, SXU eliminated CATL and terminated Wells-Griffin. The termination was confirmed by a letter from

---

[5] Although the evaluation was filled out by Wells-Griffin, the instructions appear to require that the supervisor separately complete the form. (*See* Wells-Griffin Dep., ex. 62.) Ahrens did not do so, but her signature appears on the last page of the evaluation completed by Wells-Griffin. (*Id.*)

Byrnes to Wells-Griffin. (*See* Wells-Griffin Dep., ex. 73.) Durante had decided to eliminate CATL after a discussion with SXU's president. Durante offered the following reasons for Wells-Griffin's termination and CATL's elimination:

> (1) the University could not find a director for CATL after Ahrens left the position; (2) the amount of work being completed by CATL was significantly diminished without a director after Ahrens left in June 2009; (3) the University's CFO was dismissed from the University in early August 2009 because of financial malfeasance and embezzlement, exacerbating the University's existing budgetary problems; and (4) [Durante] decided to decentralize and significantly reduce faculty development tasks that had previously been carried out by CATL.

(Dkt. 46 at 15 (citing Durante Dep. at 183-90).)[6] SXU did not hire anyone to replace Wells-Griffin, nor is there any evidence it made an effort to find Wells-Griffin a different position at SXU (as the staff handbook suggests should be done).

Wells-Griffin filed a charge with the Equal Employment Opportunity Commission ("the EEOC") on October 6, 2009 alleging retaliation and discrimination based on race. (*See* dkt. 1.) The EEOC issued a right to sue notice on August 25, 2011 (*id.* at 13), and Wells-Griffin commenced this action on November 17, 2011.

## ANALYSIS

### I.   Waiver of Claims

As an initial matter, SXU requests that the court grant summary judgment in its favor on all claims other than Wells-Griffin's claim of discrimination under Title VII in connection with her termination.[7] SXU argues that Wells-Griffin has waived these claims because she did not

---

[6] Wells-Griffin argues that these reasons are pretextual and that CATL was eliminated in order to carry out her termination. Her arguments are addressed in the court's analysis.

[7] Wells-Griffin does not provide a clear list of claims in her complaint or in her other filings. SXU enumerates her claims as (1) retaliation for her complaints of racial disparities in faculty funding; (2) retaliation for her complaints that modifications to her employment were racially motivated; (3) racially hostile work environment; (4) discrimination in SXU's decision to modify her employment;

7

respond to SXU's arguments for summary judgment on them. "The Seventh Circuit has 'long refused to consider arguments that were not presented to the district court in response to summary judgment motions.'" *Titus* v. *Ill. Dep't of Transp.*, No. 11 C 944, 2014 WL 625700, at *3 (N.D. Ill. Feb. 18, 2014) (quoting *Laborers' Int'l Union of N. Am.* v. *Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999)) (granting summary judgment on retaliation claim because plaintiff did not respond to defendant's arguments); *see also LG Elecs.* v. *Whirlpool Corp.*, No. 08 C 242, 2009 WL 5579006, at *3 (N.D. Ill. Nov. 23, 2009) ("The law is clear in the Seventh Circuit that a party waives arguments not presented to the district court in response to summary judgment motions."). By failing to respond to SXU's arguments, Wells-Griffin has waived all arguments in opposition to summary judgment for claims asserted in her complaint other than her claim of discrimination under Title VII in connection with her termination. SXU's motion for summary judgment with respect to such claims is granted.

## II.     Discrimination Under Title VII

Title VII makes it unlawful for employers to discriminate against employees because of their race. 42 U.S.C. § 2000e, *et seq*. "In order to succeed in a Title VII lawsuit, a plaintiff must show that he is a member of a class protected by the statute, that he has been the subject of some form of adverse employment action . . . and that the employer took this adverse action on account of the plaintiff's membership in the protected class." *Morgan* v. *SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (citing *Coleman* v. *Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring)). In responding to a defendant's motion for summary judgment, a plaintiff may proceed via the "direct" or "indirect" method, but the Seventh Circuit has warned that although courts may get lost in the "technical nuances" of the two methods, the "central question at issue

---

(5) discrimination in SXU's decision to terminate her employment; and (6) discrimination in SXU's failure to promote her. (*See* dkt. 40 at 1-2.)

8

is whether the employer acted [against the plaintiff] on account of the plaintiff's race." *Morgan*, 724 F.3d at 996-97. Wells-Griffin argues that her claim for racial discrimination succeeds under both the direct and indirect methods.

### A. Direct Method

"'Direct' proof includes both evidence explicitly linking an adverse employment action to an employer's discriminatory animus, and circumstantial evidence that would permit the trier of fact to infer that discrimination motivated the adverse action . . . . If the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate[.]" *Morgan*, 724 F.3d at 995-96 (citations omitted). Wells-Griffin relies on circumstantial evidence to create a genuine issue of material fact as to whether SXU's termination decision was racially motivated. Circumstantial evidence of discrimination often falls into three categories: (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) evidence, statistical or otherwise, that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for the adverse employment action. C*oleman*, 667 F.3d at 860; *see also Diaz* v. *Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011).

#### 1. Evidence of Stereotyping

Wells-Griffin contends that circumstantial evidence that her "supervisors were dismissive of her concerns and assumed the worst of her" supports the claim that she was discriminated against. (Dkt. 45 at 10.) Specifically, Wells-Griffin points to instances where her supervisors dismissed her requests for more information about her altered position, told her she was "lucky"

to have her job, claimed her duties could not take as much time as she said they did, and refused to accept her outstanding 2009 performance evaluation. (*Id.* at 9-10.) Wells-Griffin also cites Venneri's refusal to give her a second day off after she worked more than her half-time schedule for faculty orientation as evidence that her supervisors were dismissive of her concerns. (*Id.* at 10.) Wells-Griffin argues that these instances taken together indicate that her supervisors adhered to "stereotypical notions that Plaintiff was lazy, incompetent, insubordinate, uneducated, and ungrateful." (*Id.*)

Wells-Griffin cites two cases[8] for the proposition that evidence of discriminatory treatment as a result of implicit negative racial stereotypes supports a finding of discrimination under Title VII. First, in *Kimble* v. *Wisconsin Department of Workforce Development*, 690 F. Supp. 2d 765 (E.D. Wis. 2010), the court found that the plaintiff's supervisor "behaved in a manner suggesting the presence of implicit bias" against black males. *Id.* at 778. The supervisor's behavior included avoiding contact with the plaintiff, taking little interest in the plaintiff, and being quick to blame the plaintiff and slow to recognize his achievements. *Id.* at 777-78. The court concluded that these actions supported a finding of liability. *Id.* at 778. Second, in *Bellaver* v. *Quanex Corp.*, 200 F.3d 485 (7th Cir. 2000), the Seventh Circuit affirmed the district court's judgment that evaluations criticizing a female employee's "interpersonal skills" could indicate a double-standard for men and women and evidence discrimination. *Id.* at 492-93.

*Kimble* and *Bellaver* can be distinguished from the case at hand. In both cases, the plaintiff was able to contrast the supervisor's evaluation and treatment of the plaintiff with the

---

[8] Wells-Griffin also cites *Lams* v. *General Waterworks Corp.*, 766 F.2d 386 (8th Cir. 1985), in which the defendant admitted to negative racial stereotypes. *Id.* at 392-93. Although the case stands for the proposition that discriminatory treatment may be the result of stereotyping, it is easily distinguished from the case at hand.

supervisor's evaluation and treatment of other employees. For example, in *Kimble*, the plaintiff pointed to specific instances where similarly situated employees who were not black males were treated more favorably. *Kimble*, 690 F. Supp. 2d at 777-78 (comparing supervisor's different reaction to similar comments, mistakes and achievements made by plaintiff and other employees). And in *Bellaver*, the court observed that no males were criticized for their social skills in their evaluations. *Bellaver*, 200 F.3d at 493. In this case, Wells-Griffin does not provide evidence that her treatment was different from other employees. Thus, it is not possible to infer from the evidence presented that her supervisors' actions were attributable to racial stereotypes.

### 2. Evidence of Pretextual Reason for Termination

Wells-Griffin also argues that SXU's reasons for her termination were pretextual. "[I]n order to survive a motion for summary judgment, an employee need only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for [her] dismissal." *Rudin* v. *Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005) (quoting *Weisbrot* v. *Med. Coll. of Wis.*, 79 F.3d 677, 682 (7th Cir. 1996)) (internal quotation omitted). The question is not whether the stated reason for termination is fair, but whether the stated reason is *in fact* the reason for the termination. *See Zayas* v. *Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158-59 (7th Cir. 2014). SXU claims that Durante made the decision to alter and then eliminate Wells-Griffin's position due to budgetary concerns, staffing issues, and strategic planning. SXU supports its reasons by noting that it was in financial crisis in 2009 and had laid off 18 employees. In June 2009, Wells-Griffin's immediate supervisor at CATL left SXU and Wells-Griffin was the only employee remaining in CATL. SXU claims that Durante then made the decision to eliminate the department, although some clerical and administrative work

11

previously performed by CATL was reassigned to other departments. The reassigned work consisted of organizing essential events such as convocation and new faculty orientation.

Wells-Griffin does not dispute that SXU was in financial distress in 2009 and was searching for cost-savings. But she contends that the following facts indicate SXU's reasons for the termination are pretextual: (1) she was terminated soon after Venneri required that she report to work after the faculty orientation; (2) her direct supervisor, Venneri, was not aware of the decision to terminate her; (3) no documents exist regarding the termination; (4) no attempt was made to find another job at SXU for Wells-Griffin; (5) she was the only employee terminated on or around August 31, 2009; and (6) her duties were redistributed, not eliminated. (*See* dkt. 45 at 7-8, 14-15.)

First, as Wells-Griffin acknowledges in her second point, Venneri was not aware of the decision to terminate Wells-Griffin until it was made. This explains why Venneri would insist that Wells-Griffin comply with her agreed-upon work schedule shortly before she was terminated. Second, the fact that Venneri did not know of the termination does not indicate that the termination was discriminatory. Durante was ultimately in charge of the fate of CATL and had failed in her attempts to find a new director for CATL. (*See* Durante Dep. at 188:19-190:5.) In addition, Durante testified that the termination was unconnected to the incident in which Venneri raised his voice to Wells-Griffin after the faculty orientation. (*Id.* at 190:6-21.) Wells-Griffin offers no evidence to rebut these statements.

Third, the fact that no documents exist regarding the decision to eliminate CATL and terminate her position is not sufficient to show that SXU's proffered reasons are pretextual. *See Aguilera* v. *Fluor Enters. Inc.*, No. 2:10-CV-95-TLS, 2012 WL 3108864, at *16 (N.D. Ind. July 31, 2012) (lack of documentation insufficient to call employer's reason for termination into

question); *cf. Hill* v. *Potter*, 625 F.3d 998, 1004 (7th Cir. 2010) (finding lack of documentary evidence to support employer's reasons for not hiring plaintiff insufficient to show pretext). Furthermore, Durante testified that she discussed the elimination of CATL with SXU's president as required by the staff handbook. Wells-Griffin does not rebut this evidence.

Fourth, the fact that SXU did not attempt to find another job for Wells-Griffin as set out in the layoff procedures in the staff handbook is similarly insufficient to show racial intent behind the termination.[9] *See Fortier* v. *Ameritech Mobile Comm'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998) (defendant's failure to adhere to termination procedures does not necessarily provide evidence of pretext where other evidence indicates that employee failed to adequately perform). Moreover, many SXU employees had been laid off in 2009 and Durante testified that SXU was not filling vacant positions, but instead was eliminating those positions. (Durante Dep. at 187:4-24.) Thus, it is reasonable that SXU did not attempt to find Wells-Griffin another position because none was available.

Fifth, Wells-Griffin argues that the fact that she was the only employee terminated around August 2009 indicates discriminatory intent. As Durante explains in her deposition, however, Wells-Griffin was in a unique position because her department was completely eliminated in August. This occurred after several attempts to find a new director for the department and the completion of one of the department's main responsibilities for the year, organizing faculty orientation, without a director. The court cannot find that the timing of the elimination of CATL and the termination of Wells-Griffin is suspicious or indicates that the decisions were racially motivated.

---

[9] The staff handbook makes clear that it is not intended to provide contractual rights or guarantee continued employment. (*See* Well-Griffin Dep., ex. 20. at 2.)

Finally, Wells-Griffin argues that discriminatory intent can be inferred from the fact that her responsibilities were redistributed to assistants in a different department, Academic Affairs. In support, Wells-Griffin cites *Bellaver*, in which the Seventh Circuit held that "[t]he plaintiff in a single-discharge case does not need to make a showing that 'similarly-situated' employees were treated better because the inference of discrimination arises from the fact that they were constructively 'replaced' by workers outside of the protected class." *Bellaver*, 200 F.3d at 495. Where a plaintiff's main job functions have not been absorbed by other employees, however, courts have found *Bellaver*'s holding to be in applicable. *See Griffin* v. *Sisters of St. Francis, Inc.*, 489 F.3d 838, 845 (7th Cir. 2007) (plaintiff's claim that her tasks were absorbed by other employees fails where plaintiff's primary function ceased after her termination); *see also Patterson* v. *Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Although some of the clerical duties of CATL were redistributed, the undisputed facts show that after CATL was eliminated many of its functions ceased to exist. Durante testified that most of CATL's activities, including its workshops, advisory board, and scholarship grants ceased in August 2009. (Durante Dep. at 28:24-31:9.) Although SXU appears to have reinstituted some of these activities in a different form since 2009, it is clear that the elimination of CATL ended several programs previously in place at SXU. (*See id.*; *see also* Venneri Dep. at 170:16-172:2.) The fact that responsibility for some essential events that had been run by CATL was given to others is not sufficient to show that SXU's stated reasons for Wells-Griffin's termination were false.

The reasons given by SXU are legitimate non-discriminatory reasons for the termination of an employee. *See Conroy* v. *City of Chicago*, 708 F. Supp. 927, 934 (N.D. Ill. 1989) (employer's justification that employee was laid off "as part of a small reorganization which involved the creation of a new position at a lower pay grade which encompassed more vital

functions" was valid and non-discriminatory). Wells-Griffin has not raised an issue of material fact with respect to the believability of SXU's reasons for her termination. This is especially true when viewed in light of the fact that Wells-Griffin had been offered and had not accepted a second half-time position to allow her to continue as a full-time employee (albeit with the possibility she would bear greater job responsibilities). *See Lim* v. *Trustees of Ind. Univ.*, No. IP-99-0419-C-M/S, 2001 WL 1912634, at *39 (S.D. Ind. Dec. 4, 2001) (finding supervisor's prior accommodations for plaintiff contradicted plaintiff's claim for discrimination).

*   *   *

Considering the evidence presented and making all inferences in her favor, Wells-Griffin does not present the type of "convincing mosaic" necessary to survive summary judgment under the direct method. *See Coleman*, 667 F.3d at 860 (citing *Rhodes* v. *Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). The undisputed facts presented do not support the claim that SXU terminated the plaintiff because of her race (either intentionally or because of unconscious stereotypes). Furthermore, Wells-Griffin does not produce evidence from which a rational factfinder could infer that the company lied about its reasons for her termination. Her claim thus fails under the direct method.

### B. Indirect Method

In order to meet its initial burden under the indirect method, a plaintiff must show "(1) she is a member of a protected class, (2) her job performance met [her employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Burks* v. *Wis. Dep't of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). If the plaintiff

makes this showing, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. *Morgan*, 724 F.3d at 996 (citing *Keeton* v. *Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012)). "If the employer does so, the burden shifts back to the plaintiff to present evidence that, if believed by the trier of fact, would show that the real explanation for the action is discrimination." *Id*. The parties do not dispute the first three elements of Wells-Griffin's *prima facie* case: Wells-Griffin is a member of a protected class; she met SXU's legitimate expectations; and she suffered an adverse employment action when she was terminated. (*See* dkt. 40 at 12-13.)

### 1. Comparators

In support of the fourth element of her *prima facie* case, Wells-Griffin presents three comparators, Kathy McElligott (executive secretary to Durante), Debbie Keane (assistant to Durante), and Debbie Nutley (secretary to Venneri). These three women are all Caucasian, were assistants in the Academic Affairs department, and were supervised by Durante and Venneri. They were not terminated in August 2009. SXU argues that the proposed comparators are not similarly situated because they were non-exempt[10] secretaries and Wells-Griffin held an exempt position that included non-clerical work. The court has not been provided with background or job descriptions for the three comparators or any analysis of whether their responsibilities would have been similar to those of Wells-Griffin.

In determining whether two employees are similarly situated, a court must "look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had

---

[10] Although the statements of fact are unclear on whether the comparators are non-exempt, (s*ee* dkt. 46, ¶ 56 (Wells-Griffin admits only that comparators were not "exempt coordinators in CATL")), the parties appear to agree that they are non-exempt in their briefing.

16

comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision.'" *Pavlovic* v. *Bd. of Educ. for City of Chicago*, No. 11 C 830, 2012 WL 4361432, at *5 (N.D. Ill. Sept. 21, 2012) (quoting *Ajayi* v. *Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003)). "[C]omparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories[.]" *Senske* v. *Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (citation omitted).

Although the court has little information with which to consider the relevant factors, it is undisputed that Wells-Griffin performed non-clerical tasks specific to CATL. (Dkt. 52, ¶ 4; Wells-Griffin Dep. 41:11-42:7, 46:19-47:22, 108:4-17 ("I played a more integral role in developing the programs, not so much clerical anymore but actually meeting with faculty members, learning the scope of their plans for the programs they wanted developed for their respective departments, sitting in on budget meetings, giving input to those meetings, selecting facilities for events, planning the menu, more web related activity.").) These tasks would be outside the purview of the putative comparators. Furthermore, Wells-Griffin's concern that accepting the half-time support position in CIE would "eradicate the promotion [she] worked so hard to bring to fruition," (Wells-Griffin Dep., ex. 45 at 2), supports the conclusion that her exempt position in CATL was distinct from the positions of the assistants in the Academic Affairs department. Finally, the department in which the putative comparators worked, unlike CATL, was not eliminated in August 2009. Thus, the comparators are not similarly situated to Wells-Griffin and any differences in treatment can be attributed to their different job descriptions, job status, and responsibilities.

## 2. Inference from Redistribution of Duties

Wells-Griffin argues that she meets her *prima facie* burden because her duties were redistributed to non-African American employees. *See Bellaver*, 200 F.3d at 494-95 (showing of more favorable treatment of similarly situated employees is unnecessary in single discharge case where plaintiff's duties were redistributed to workers outside the protected class). As discussed above, Wells-Griffin's non-clerical duties were not absorbed by others. In fact, a significant amount of CATL's activities ceased with the elimination of the department and her termination in August 2009. Some organizational responsibilities transferred to other employees, but Wells-Griffin does not detail to whom these responsibilities fell and whether the individuals were members of the protected class. Thus, Wells-Griffin fails to marshal facts from which a factfinder could infer that she was constructively replaced by similarly situated white employees.

## 3. Non-Discriminatory Reason for Termination

Even if Wells-Griffin were able make a *prima facie* case under the indirect method, as discussed above, she has not provided evidence from which a rational factfinder could infer that SXU's reason for termination was pretextual. Thus, Wells-Griffin's claims cannot survive summary judgment under the indirect method.

## CONCLUSION

For the reasons stated above, SXU's motion for summary judgment (dkt. 39) is granted. This case is terminated.

Date: March 13, 2014

_____
U.S. District Judge Joan H. Lefkow